IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JIMMY DAVIS,

Plaintiff,

v.

CITY OF ATLANTA, GEORGIA, et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-2936-TWT

**OPINION AND ORDER**

The Plaintiff argues his constitutional rights were violated when he was briefly arrested and handcuffed following his involvement in a traffic accident. He brings suit under 42 U.S.C. § 1983 against the City of Atlanta and against the officer who arrested him. Given the confusing situation following the automobile accident at issue, the Plaintiff has not shown that his arrest was unreasonable under the circumstances.

## I. Background

The Plaintiff was traveling northbound on Piedmont Avenue in Atlanta, Georgia, at about seven p.m. on August 1, 2011, when his car was struck by a vehicle operated by Defendant Suhail Alutaibi. The Plaintiff called 911 to report the accident,

and Defendant Officer J. M. Wolford was dispatched to the scene. When Officer Wolford arrived, the Plaintiff informed him he was a private investigator carrying a concealed weapon.[1]

Officer Wolford briefly spoke to a witness to the accident, Palencia Ferguson, before speaking with the Plaintiff and Alutaibi. It is unclear what Ferguson told Officer Wolford but she left the scene before the two spoke again. Based on the damage to the two vehicles and Alutaibi's contention that the Plaintiff had rear-ended him, Officer Wolford issued the Plaintiff a citation for following too closely. The Plaintiff contends he did not have a chance to explain his side of the story and that he began asking Officer Wolford to summon a supervisor. Instead of calling a supervisor, Officer Wolford asked the Plaintiff to sign the citation. As the Plaintiff moved to sign it, Officer Wolford arrested the Plaintiff and placed him in handcuffs.[2] Officer Wolford contends that the Plaintiff refused to sign the citation, but the Plaintiff claims he was moving to sign it.

The Plaintiff further contends that Officer Wolford used excessive force in arresting the Plaintiff. First, Officer Wolford allegedly twisted the Plaintiff's right arm in order to handcuff him. Then, after asking the Plaintiff if he had any weapons and

---

1 (Davis Dep. at 27).

2 (Davis Dep. at 88-91).

being reminded that the Plaintiff had a concealed firearm, Officer Wolford allegedly stated "You people," in a manner that the Plaintiff understood to be racially charged.[3] Officer Wolford denies making this statement.[4] Officer Wolford then shoved the Plaintiff into the patrol car and, when the Plaintiff complained the handcuffs were too tight, Officer Wolford tightened them further. Officer Wolford contends he loosened the handcuffs upon the Plaintiff's request.[5]

Officer Wolford's supervisors, Lt. David Wilson and Sgt. Robert McFall soon arrived at the scene. Wilson thought that Officer Wolford had not gotten the facts of the accident correct and directed Officer Wolford to remove the Plaintiff from his patrol car and un-cuff him.[6] The witness, Ferguson, returned to the scene and explained that Alutaibi was the one who hit the Plaintiff's vehicle. The Defendants contend that the Plaintiff had Ferguson's contact information throughout the encounter and did not offer it to Officer Wolford, only to Wilson. In any event, all charges

---

3 (Davis. Dep. at 30, 160).

4 (Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Exs. 2-11, Atlanta Police Department Office of Professional Standards Complaint File 12-I-0149-MISC (the "OPS Report"), Ex. 2, pp. 9-10).

5 (Davis Dep. at 30-32; OPS Report 7-1-14).

6 (OPS Report, 8-1-7, 8-2-7).

against the Plaintiff were dropped and Wilson apologized to the Plaintiff on behalf of the APD.[7]

The Plaintiff went to the emergency room with swollen, purple wrists. A few days later, he set out on a road trip to California where he noticed ongoing pain and swelling in his shoulder where he had never felt discomfort before. The Plaintiff contends he has been diagnosed with a torn rotator cuff which he is treating with physical therapy and painkillers, although doctors ultimately recommend he has surgery.[8]

The Plaintiff filed an official complaint with the APD, and the APD investigated Officer Wolford's conduct. It concluded that Officer Wolford:

> failed to conduct a proper accident investigation which led to Mr. Davis being improperly cited and detained for a traffic infraction he did not commit. ... [Wolford] did not complete a thorough accident investigation, his actions towards Mr. Davis were predicated by incomplete information, and if a proper investigation was completed, Officer Wolford would have ensured that Mr. Davis would have received the necessary and appropriate police services.[9]

The City of Atlanta and Officer Wolford have filed a motion for summary judgment. The City claims that all claims against Officer Wolford in his official

---

7 (OPS Report 8-2-7).

8 (Davis Dep. at 118-121, 125-128).

9 (OPS Report, July 19, 2012, at 3).

capacity are in fact claims against the City, and further argues that the Plaintiff has not established Monell liability. The City contends it properly trained and supervised Officer Wolford. Next, Officer Wolford argues he is entitled to qualified immunity from the Plaintiff's federal claims and to official immunity from the Plaintiff's state law claims, which are nevertheless without merit.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[10] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[11] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[12] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[13] "A mere 'scintilla' of evidence

---

10 FED. R. CIV. P. 56(c).

11 Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

12 Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

13 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[14]

## III. Discussion

### A. The Plaintiff's Claims Against the City of Atlanta

The Plaintiff seeks to hold the City of Atlanta liable for Officer Wolford's actions. The Plaintiff also seeks to hold Officer Wolford liable in his official capacity, which is in actuality also an attempt to hold the City liable.[15] In order to hold the City liable under section 1983, the Plaintiff has to show than an official policy or custom of the City caused the constitutional deprivation.[16] Here, the Plaintiff has not shown that any constitutional deprivation occurred as a result of a custom or policy of the City of Atlanta. Indeed, the Plaintiff does not provide evidence of the existence of any such policy or custom. Further, the Plaintiff's vague contention that the City failed to properly train and supervise Officer Wolford is without merit. First, the City provided Officer Wolford with ample Fourth Amendment training.[17] Next, the City's proper supervision of Officer Wolford helped to remedy the Plaintiff's situation, not

---

14 Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

15 See Kentucky v. Graham, 473 U.S. 159 (1985).

16 Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658 (1978).

17 (Wolford Dep. at 16, 19, 125-26).

exacerbate it. The arrival of Officer Wolford's supervisors allowed the APD to figure out what had happened at the accident and to drop any charges against the Plaintiff. Accordingly, the Plaintiff has not shown that any constitutional deprivation he experienced was caused by the City of Atlanta. His claims against the City of Atlanta and Officer Wolford in his official capacity should be dismissed.

**B. The Plaintiff's Federal Claims Against Officer Wolford**

The Plaintiff also brings federal claims against Officer Wolford in his individual capacity. Officer Wolford contends he is entitled to qualified immunity from the Plaintiff's federal claims. Qualified immunity generally protects government officials sued in their individual capacity when they were performing discretionary functions.[18] To obtain qualified immunity, the government official defendant must show that he or she was acting within the scope of his discretionary authority, and then the plaintiff must show that the defendant violated a clearly established constitutional right.[19]

Here, the parties appear to agree that Officer Wolford was acting within the scope of his discretionary authority. The Plaintiff argues that Officer Wolford is not entitled to qualified immunity on the false arrest claim because Officer Wolford did

---

18 Wilson v. Layne, 526 U.S. 603, 609 (1999).

19 Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995).

not have even arguable probable cause to arrest the Plaintiff. However, the other driver blamed the Plaintiff for causing the accident and Officer Wolford had just issued the Plaintiff a citation for following too closely. In Georgia, an officer has the discretion to make an arrest for a traffic offense.[20] Further, Officer Wolford's determination that the Plaintiff was at fault for the accident was based on the account of Alutaibi – which Officer Wolford had no way of knowing was false – and the damage to the vehicles, which supported Alutaibi's account. Likewise, Officer Wolford did not have the benefit of Ferguson's eyewitness account when he issued the citation, and the Plaintiff admits he never told Officer Wolford he had Ferguson's contact information.[21] Even if Officer Wolford could be faulted for failing to adequately listen to the Plaintiff or failing to seek out the eyewitness, the Court concludes that "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law."[22]

Despite the findings of the APD investigation that Officer Wolford could have conducted a more thorough investigation, the Court concludes that Officer Wolford's

---

[20] O.C.G.A. § 40-13-30.

[21] (Davis. Dep. at 102).

[22] Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997).

investigation was not so deficient as to deprive him of qualified immunity. Unlike in Kingsland v. City of Miami,[23] there is no indication here that Officer Wolford fabricated or misrepresented any information in order to establish probable cause to arrest the Plaintiff. Even assuming that Officer Wolford did not fully discuss the accident with the Plaintiff and that he did not properly discuss the accident with the witness, Officer Wolford's decision to place the fault on the Plaintiff was based on the statement of Alutaibi and on the damage to the vehicles. In Kingsland, the arresting officers "fabricated" evidence and "unreasonably disregarded" easily discoverable facts to establish probable cause.[24] Here, Officer Wolford chose to credit the account of Alutaibi, which was supported by the physical evidence, over the account of the Plaintiff. This was not a situation where qualified immunity is unavailable because the officer "simply did not bother to do what any police officer acting reasonably in the circumstances would have done to clarify the factual situation."[25] Importantly, Officer Wolford's supervisors were shortly summoned to the scene and were able to remedy the situation. Accordingly, Officer Wolford is entitled to qualified immunity and the

---

23 382 F.3d 1220, 1233 (11th Cir. 2004).

24 Id.

25 Id. at 1228-29 (discussing whether probable cause had been established).

federal claim for false arrest against him in his individual capacity should be dismissed.

Officer Wolford is also entitled to qualified immunity on the Plaintiff's claim for excessive use of force. Qualified immunity applies to Officer Wolford unless every reasonable officer in Officer Wolford's position would conclude that the force he used was unlawful.[26] The Plaintiff argues that Officer Wolford used excessive force in handcuffing the Plaintiff and then tightening the handcuffs further, and in wrenching the Plaintiff's shoulder in order to handcuff him. However, the Plaintiff's own testimony is contrary to his allegations. The Plaintiff testified that, after he told Officer Wolford the handcuffs were too tight, Officer Wolford adjusted them to an even tighter position, but the Plaintiff admits he did not complain again about the handcuffs being too tight. Although the Plaintiff went to the hospital following the encounter, he did not follow up with any doctor concerning the damage to his wrists.[27] Additionally, the Plaintiff contends that he has to have surgery and painkilling shots for damage done to his shoulder, but he has not submitted as evidence any medical

---

[26] Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (1993).

[27] (Davis Dep. at 126).

paperwork, even though he stated in his deposition that his attorney had such paperwork.[28]

In any event, Officer Wolford's use of force was far less severe than what has been found excessive in this circuit and there is no indication that his use of force was plainly unlawful. Accepting his allegations as true, the Plaintiff was thrown into the police car and was subjected to five minutes of overly-tight handcuffs. In Rodriguez v. Farrell,[29] the court concluded an officer did not use excessive force when he grabbed the plaintiff's arm, jerked it behind the plaintiff's back, and handcuffed the plaintiff as the plaintiff fell to his knees, causing the plaintiff to scream in pain. The handcuffs remained on the plaintiff until he arrived at the police station. Ultimately, because of prior surgeries, the handcuffing caused tremendous complications to the plaintiff who had to have twenty-five additional surgeries and the lower part of his arm amputated. The court nevertheless concluded that the officer's handcuffing and arresting technique was not unreasonable force because he used a common arresting technique and because he did not know about the plaintiff's prior condition. Here, assuming that the Plaintiff requires continuing medical treatment, Officer Wolford's use of force was not excessive. Handcuffs are a common part of arrests, and the

---

28 (See Davis Dep. at 128).

29 280 F.3d 1341, 1351-53 (11th Cir. 2002).

Plaintiff was only handcuffed for around five minutes. Although the Plaintiff's shoulder may have been injured when he was handcuffed and put in the patrol car, the plaintiff in Rodriguez was subject to even more violent handcuffing, and that was not considered an excessive use of force. Because reasonable police officers could conclude that Officer Wolford's use of force was appropriate, he is entitled to qualified immunity on the Plaintiff's excessive force claim, and that claim should be dismissed.

**C. The Plaintiff's State Law Claims Against Officer Wolford**

Officer Wolford argues he is entitled to official immunity from the Plaintiff's state law claims for assault and battery, false arrest, and for punitive damages. Official immunity protects public officers sued in individual capacities for misconduct in carrying out discretionary or ministerial activity.[30] In Georgia, an officer:

> may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[31]

---

30 Cameron v. Lang, 274 Ga. 122, 123 (2001).

31 GA CONST Art. 1, § 2, ¶ IX (d).

In other words, to be liable for the performance of a discretionary function, as Officer Wolford was undertaking here, Officer Wolford must have been acting with actual malice or intent to injure.[32]

Here, the Plaintiff argues that Officer Wolford acted with actual malice because he acted angry with the Plaintiff and because when the Plaintiff disclosed his firearm Officer Wolford stated "You people," which the Plaintiff perceived to be racially motivated. However, "in the context of official immunity, actual malice means a deliberate intention to do a wrongful act."[33] As discussed above, Officer Wolford did not wrongfully arrest or use excessive force against the Plaintiff, so he could not have intended to do a wrongful act. Any ill will, anger, and rancorous personal feelings toward the Plaintiff are insufficient to establish actual malice.[34] Because there is no indication that Officer Wolford had a deliberate intention to harm the Plaintiff, Officer Wolford is entitled to official immunity, and the state law claims against him should be dismissed.

---

32 Cameron, 274 Ga. at 125.

33 Adams v. Hazelwood, 271 Ga. 414, 415 (1999).

34 See id. at 414-15.

## IV. Conclusion

For the reasons set forth above, the Defendants City of Atlanta and Officer J. M. Wolford's Amended Motion for Summary Judgment [Doc. 12] is GRANTED. Their Motion for Summary Judgment [Doc. 11] is DENIED as MOOT. Similarly, their Motion to Strike Unauthenticated Documents Used by Plaintiff in Defense Against Motion for Summary Judgment [Doc. 15] is DENIED as MOOT. Because the Court is granting summary judgment on all of the Plaintiff's federal claims, as well as his state law claims against Officer Wolford, the only remaining claim is the Plaintiff's claim for negligence against Suhail Alutaibi, with whom he was in the car accident at issue. Both the Plaintiff and Suhail Alutaibi are residents of the State of Georgia.[35] Because the federal claims have been dismissed, the Court no longer has subject matter jurisdiction over this case.[36] The case is therefore REMANDED to the Superior Court of Fulton County.

SO ORDERED, this 9 day of June, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

35 (See Compl. ¶¶ 1, 4).

36 See 28 U.S.C. § 1367.